# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ARNIE GELLER, et al.,<br><br>                    Plaintiffs,<br>   vs.<br><br>GUNTHER VON HAGENS, PLASTINATION COMPANY, INC., and INSTITUTE FOR PLASTINATION,<br><br>                    Defendants. | CASE NO. 11cv2558-IEG (NLS)<br><br>**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO QUASH SUBPOENA**<br><br>[Doc. No. 1.] |

## INTRODUCTION

Defendants have filed a motion to quash a subpoena served on third party San Diego Natural History Museum, pursuant to Federal Rule of Civil Procedure 45. Having considered the matter, and based on the following, the Court **DENIES** the motion to quash.

## BACKGROUND

This action is an ancillary discovery proceeding related to an underlying lawsuit pending in the Middle District of Florida, Tampa Division, Case No. 8:10-cv-01688-EAK-AEP. Defendants are in the business of arranging exhibits of plastinated human bodies, known as "Body Worlds," that has been presented at museums around the country, including the San Diego Natural History Museum ("the Museum"). (Motion to Quash, Mem. of P & A ("Mot.") at 1.) Plaintiffs are the suppliers to non-party Premier Exhibitions, Inc., which also exhibits plastinated bodies throughout the country. (*Id.*) In the underlying case, Plaintiffs assert claims of defamation and tortious interference against

Defendants based on a television news report, ABC's 20/20 program called "The Business of Bodies," about where and how the human body specimens were obtained. (*Id.*; Opposition ("Opp.") at 1.)

Plaintiffs allege Defendants publicly stated the following: "(1) the bodies for the 'Bodies ... the Exhibition' were purchased on China's 'black market,' and were bodies of tortured, abused and executed Chinese prisoners; (2) dealers made "body runs" to the 'black market' and purchased bodies of executed prisoners for $200–300; (3) the bodies were located in a rundown warehouse in northern China; (4) von Hagens stated it was quite normal that executed prisoners were used for anatomical purposes in China; (5) the bodies were obtained illegally; and (6) the bodies which were either obtained from the 'black market' or otherwise illegally obtained were used in the 'Bodies ... the Exhibition.'" [M.D. Fla., Case No. 8:10cv1688-EAK-AEP, *Order Denying Summary Judgment*, Doc. No. 94 at 3.]   Further, Plaintiffs allege Defendants tortiously interfered with five of their contracts with venues and museums in Europe. [M.D. Fla., Case No. 8:10cv1688-EAK-AEP, *Second Amended Complaint*, Doc. No. 48 ¶ 127.]

On October 12, 2011, Plaintiffs served 22 separate subpoena requests on museums and science centers throughout the United States, including the San Diego Natural History Museum. (Mot., Exh. A.) Responses were expected by November 11, 2011. *Id.* The subpoena requests sought business and financial documents. (Mot. at 1.) On November 2, 2011, Defendants moved to quash the subpoena on the grounds of relevance, overbreadth, and confidentiality. [Doc. No.1.] The Court set a briefing schedule on the motion and stayed compliance with the subpoenas until an order was issued resolving the matter. [Doc. No. 4.]

On November 10, 2011, Defendants filed a notice stating they had filed a motion for a protective order in the underlying case in Florida. [Doc. No. 6.] The Florida Court issued a preliminary order postponing compliance with the subpoenas until it could decide the motion. [*Id.* at Exh. A.] The Florida court also set a hearing on the motion for a protective order for November 16, 2011.

On November 18, 2011, Plaintiffs filed their Opposition to the motion to quash in this Court. [Doc. No 7.] On November 28, 2011, Defendants filed a Reply wherein they modified their original motion to quash in light of the Florida court's partial grant of their motion for a protective order which

1  was issued on November 23, 2011. (Reply at 1.) The Florida court granted Defendants' motion with
2  regard to "Communication Requests" and "Financial Requests" but denied the motion as it pertained
3  to the "Provenance Requests." (Reply, Exh. A at 11.) On December 2, 2012, Plaintiffs filed a
4  supplemental brief addressing Defendants' modified motion to quash in light of the Florida court's
5  decision. The issue before this Court is whether the Provenance Requests should be quashed pursuant
6  to Federal Rule of Civil Procedure 45.

7  **DISCUSSION**

8  (a)  *Effect of Florida Court's Ruling*

9  The Florida court granted Defendants' motion for a protective order relating to the
10 Communications and Financial Requests contained in the subpoena directed at the Museum.
11 Defendants therefore state this court need not address these documents in its consideration of the
12 present motion to quash. Accordingly, the Court **GRANTS** the motion to quash with regard to the
13 Financial and Communication Requests, consistent with the Florida court ruling.

14 (b)  *The Provenance Requests*

15 The Provenance Requests[1] seek information about the source of Defendants' body specimens.
16 The Florida court found the Provenance Requests to be relevant to Plaintiffs' tortious interference
17 claim based on the allegation by Plaintiffs that Defendants " 'attempt[ed] to interfere with the business
18 relationships, [] [by] correspond[ing] with representatives of the [European] Venues and provid[ing]
19 each with information relating to the [ABC] Broadcast,' which includes alleged false statements by
20 the Defendants that differentiate between the provenance of the parties' specimens." (Reply, Exh. A
21 at 8.) The court stated, "Specifically, the Plaintiffs claim that 'to distinguish their specimens from
22 Plaintiffs' unclaimed Chinese body specimens, the defendants have represented to museums and
23 others that their specimens are not from China, and with limited exception, are all donated.'" (*Id.* at
24 5.) Thus, the Florida court denied Defendants' motion for a protective order with regard to the
25 Provenance Requests. (*Id.* at 11.)

26 ///

27

28  [1] These are Requests 16-18, 20-41, and 43 for documents related to the human body specimens or human body parts received by or used by the Museum. (Reply, Exh. A at 11.)

- 3 -                                                                                   11cv2558-IEG (NLS)

1         (b)    *Application of Rule 45*

2     Defendants argue the Florida court made its ruling based on whether the requests were relevant under Rule 26(b)(1) and specifically stated, "it must be noted that [the] Court makes no finding in this Order as to the Museum Subpoenas under Rule 45 standards." (Reply at 2.) Defendants thus argue, "the ruling has no impact on Defendants' argument that they have a personal right or privilege which prohibits the disclosure of the requested documents...." (*Id.*) Defendants then refer this Court to "the reasons set forth in [their] moving papers" for why the subpoena should be quashed on the basis of personal right or privilege.

    However, the section of Defendants' moving papers addressing the issue of privilege specifically refer to Requests 1-15, 19, 42, and 44, all of which pertain only to the "Communication and Financial Requests," not the Provenance Requests. (Mot. at 4-6.) The claim in the moving papers is also one based not on personal right or privilege but "confidential and private business information" protected under a nondisclosure agreement with the Museum. (*Id.*)

    In their Reply brief Defendants attach their business confidentiality argument to the Provenance Documents and additionally assert they have a right of privilege in the documents. Even assuming Defendants impliedly included the Provenance Documents in their initial briefing, because asserting privilege versus confidentiality is a different argument Defendants are inappropriately raising it for the first time in their Reply brief. *See Dytch v. Yoon*, 2011 WL 839421 *3 (N.D.Cal.) (*citing State of Nev. v. Watkins*, 914 F.2d 1545, 1560 (9th Cir. 1990) ("It is improper for a moving party to introduce new facts or different legal arguments in the reply brief than those presented in the moving papers."). Under Rule 45(c)(3)(A)(iii) a court *must* quash or modify a subpoena that "requires disclosure of *privileged and other protected matter*." (Emphasis added.) Under subsection (c)(3)(B)(i) a court *may* quash a subpoena requiring "disclos[ure] [of] a trade secret or other *confidential* research, development, or commercial information." (Emphasis added.) The burden of persuasion may differ depending on which rule is invoked. *See Mannington Mills v. Armstrong World Industries, Inc.*, 206 F.R.D. 525, 529 (D.Del., 2002) (*citing Micro Motion Inc. v. Kane Steel Co., Inc.*, 894 F.2d 1318, 1323 (Fed.Cir.1990)).

    Nevertheless, in the interests of judicial economy and because Plaintiffs filed a Supplemental

Brief or Sur-reply that the Court will also consider, and wherein Plaintiffs were free to respond to the new argument, the Court will address the merits of the issue.

As to the claim of privilege, "Where the elements of a claim or defense are governed by state law, privileges are determined in accordance with state law." *Cunningham v. Connecticut Mut. Life Ins.*, 845 F.Supp. 1403, 1409 (S.D.Cal, 1994). Florida law controls the issue of tortious interference but Defendants have not cited one Florida case that establishes any privilege in the Provenance Documents. *See e.g. American Mut. Liab. Ins. Co. v. Superior Court*, 38 Cal.App.3d 579, 593 (1974) (addressing lawyer-client privilege); *Sav-On Drug Stores v. Superior Court*, 15 Cal.3d 1, 7 (1975) (addressing tax return privilege). A movant must state specific reasons why a subpoena should be quashed; simply making a general assertion is inadequate. *See Herring v. Clark*, 2011 WL 24336672 * 9 (E.D. Cal.) (must state reasons for motion to quash with specificity); *see also Diamond State Ins. Co. V. Rebel Oil Co., Inc.*, 157 F.R.D. 691, 698 (D.Nev., 1994) ("A generalized, self-serving, conclusory assertion of protection or privilege is without merit."). Additionally, "[T]here is no absolute privilege for trade secrets and similar confidential information." *Federal Open Market Committee of Federal Reserve System v. Merrill*, 443 U.S. 340, 362 (1979) (internal quotation and citation omitted). The Court does not find a right of privilege in the Provenance Documents.

As to the claim of confidentiality, Defendants must show that the Provenance Documents are confidential, and their disclosure harmful, and Plaintiffs must establish that disclosure is both relevant and necessary. See *Diamond State Ins. Co. V. Rebel Oil Co., Inc.*, 157 F.R.D. at 698 (D.Nev., 1994) (*citing In re Grand Jury Investigation*, 974 F.2d 1068, 1070 (9th Cir.1992) (person asserting confidentiality has the burden of showing it applies to given set of documents); *see also Centurian Indus. v. Warren Steurer & Assocs.*, 665 F.2d 323, 325 (10th Cir. 1981) (party seeking discovery must show relevance and need to gain disclosure). Plaintiffs concede the confidentiality of these documents as business information but state this is no reason to quash the subpoena because a protective order is in place in the underlying case that protects the information. (Opp. at 8.)

A protective order is a remedy that is available to "any person" who is able to establish good cause for issuance of the protective order "to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense. . . ." Rule 26(c). In determining good cause

a court "must balance the requesting party's need for information against the injury that might result if uncontrolled disclosure is compelled." Arthur R. Miller, *Confidentiality, Protective Orders, and Public Access to the Courts*, 105 Harv.L.Rev. 427, 432-33 (1991).

The Advisory Committee Notes to rule 45 "recognize that 45(c)(3), which authorizes the quashing of a subpoena, tracks the provisions of Rule 26(c), which empowers the issuance of a protective order." *Mannington Mills*, 206 F.R.D. at 525; *see also Exxon Shipping Co. v. U.S. Dep't of Interior*, 34 F.3d 774, 779-80 (9th Cir. 1994) (applying both rules to motion to quash subpoena).

The Florida court has determined the Provenance Requests are relevant and necessary to Plaintiffs' tortious interference claims. (Reply, Exh. A.) Even assuming the Court finds these documents to be confidential or privileged, they are nevertheless relevant to the issues in this case, as articulated by the Florida court. Generally, the remedy for relevant yet privileged matter is a protective order. As Plaintiffs note in their original Opposition, there is already a two-tiered Protective Order in place in the underlying action. (Opp., Exh. 12.) The Protective Order "protects discovery from being released to the public [and] also restric[ts] some documents to attorneys' eyes only so that the opposing parties themselves will not have access to the sensitive information." (*Id.* at 1.) The Protective Order allows any party to designate a document containing competitive, commercial or other sensitive information as "attorneys' eyes only." (Opp., Exh. 12.) Any confidentiality concerns about the Provenance documents may be addressed by designating the documents as "attorneys' eyes only."

//
//
//
//
//
//
//
//
//

**CONCLUSION**

Having considered the parties' positions and the posture of the case, the Court **HEREBY ORDERS:**

1. The motion to quash is **GRANTED** with regard to the Communication and Financial Requests.

2. The motion to quash is **DENIED** without prejudice with regard to the Provenance Documents.[2]

**IT IS SO ORDERED**.

DATED: December 13, 2011

Hon. Nita L. Stormes
U.S. Magistrate Judge
United States District Court

---

[2] The Court notes it is not at this time ordering production of the documents by the Museum. As Defendants correctly point out in their Reply, the Museum has objected to the subpoena and its objections have yet to be adjudicated. If the Museum and Plaintiff are unable to reach agreement on the terms of production of the Provenance Documents, they must file a Joint Motion for Determination of Discovery Dispute no later than 45 days from the filing date of this Order.